No. 96-648

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 53


THE TOWN OF WHITEHALL, MONTANA,
a body corporate and politic,

Petitioner and Respondent,

v.

RICK PREECE and RALPH "BUTCH" JONES, et al.,

Respondents and Appellants.


APPEAL FROM:   District Court of the Fifth Judicial District,
In and for the County of Jefferson,
Honorable Frank M. Davis, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Patricia L. Day-Moore (argued), Whitehall, Montana

For Respondents:

Jack H. Morris (argued), Whitehall, Montana

Honorable Joseph P. Mazurek, Attorney General;
Stephen C.
Bullock (argued), Assistant Attorney General,
Helena, Montana

For Amici Curiae:

Mae Nan Ellingson (argued) and Keith Strong,
Missoula, Montana
(Montana Board of Investments)

David J. Patterson, Missoula, Montana (Montana
Association of Counties)

Paul J. Luwe, Bozeman, Montana (Montana League of
Cities & Towns)


Heard:   January 13, 1998
Submitted:   January 15, 1998

Decided: March 10, 1998

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1    The Fifth Judicial District Court, Jefferson County, declared invalid a petition for referendum to repeal a city ordinance requiring metering of water in the Town of Whitehall's water system.  We affirm.

¶2    We address the following issues raised on appeal:

¶3    1.  Is this action barred under the applicable statute of limitation?

¶4    2.  Did the District Court err when it determined that Town of Whitehall Ordinance Chapter 4.00 was administrative rather than legislative and was therefore exempt from the referendum proceedings allowed under the Montana Constitution and § 7-5-131(1), MCA?

¶5    The Town of Whitehall is a municipality located in Jefferson County, Montana.  The Respondents and Appellants appear in their capacity as electors and taxpayers of the Town of Whitehall.

¶6    Whitehall has historically charged its residents a flat rate for water services. However, changes in and improvements to the town's water system were pending andundergoing public discussion for several years prior to this lawsuit.  In August 1992, in recognition that improvements were needed to the town's water system as a whole, theMontana Public Service Commission (PSC) had approved an increase in water rates.  At that time, the PSC directed the town to explore options for reducing its consumption of water, including the use of water meters.  In May 1994, the Whitehall Town Council had passed a resolution approving the submission of an application to the State of Montana Department of Commerce for a $350,000 Community Development Block Grant to be used as partial funding for a water system improvement project, and in June 1995, the Town of Whitehall, through its mayor, contracted with the Department of Commerce for that block grant.  In August 1995, the Whitehall Town Council had passed a loan resolution authorizing the town to borrow $450,000 from the United States Department of Agriculture

Rural Economic
Community Development Program to be used for the water system
improvement project.   In
September 1995, Whitehall's mayor had entered into a Treasure State
Endowment Program
Grant Contract with the Department of Commerce for a $500,000 grant
to be used for the
water system improvement project.

¶7    On November 29, 1995, the Whitehall Town Council adopted
Whitehall Town
Ordinance Chapter 4.00, entitled "Regulation of Water Use."  This
Ordinance Chapter
required, in part, that a water meter be installed on the service
pipe for each water user
served by the town water system.  Another part of the Ordinance
provided that Whitehall's
water rates would no longer be set by flat rate, but would be
determined by the amount of
water used by each household and each business, as measured by the
water meters.

¶8    In January 1996, the Appellants filed with the office of
the Jefferson County Clerk
and Recorder a petition to place a referendum on the ballot for a
special election to repeal
Whitehall Town Ordinance Chapter 4.00.  The town's attorney
approved the petition for form
and compliance with § 7-5-131 and -132, MCA, and
submitted it to the Jefferson County
election administrator to be placed on the ballot for special
election.

¶9    On January 31, 1996, the Whitehall Town Council directed
that suit be brought in
District Court pursuant to § 7-5-135, MCA, to determine the
validity and constitutionality
of the referendum petition.  On February 13, 1996, the town filed
a complaint seeking a
declaration that the petition for referendum was invalid under § 7-5-131, MCA, and the
Montana Constitution.  Following the parties' submission of
stipulated facts, briefing, and
oral argument, the District Court found "generally" for the town
and dismissed the petition
for a referendum.  The court determined that this was an
administrative, as opposed to
legislative, matter and was thus not subject to referendum.  It
also determined that allowing
the referendum to proceed would potentially interfere with
Whitehall's contractual
obligations on the grant and loan contracts.

ISSUE 1

¶10   Is this action barred under the applicable statute of limitation?

¶11   A suit to determine the validity and constitutionality of a petition for initiative or referendum must be initiated within fourteen days of the date the petition has been approved as to form by the local government attorney.  Section 7-5-135(1), MCA.  In this case, the petition for referendum was approved as to form on January 30, 1996, and this action was filed fourteen days later, on February 13, 1996.

¶12   Appellants point out that under § 7-5-134, MCA, the county must, as a preliminary matter, approve or reject a petition for initiative or referendum within twenty-one days after the sample petition is submitted for approval as to form.  In this case, the sample petition was filed on January 8, 1996, and the notice of approval as to form was filed twenty-two days later, on January 30, 1996.  Appellants assert that the maximum time allowable between submission of a referendum for approval by the county and commencement of an action to challenge it is the sum of the time frames allowed under  7-5-134 and -135, MCA:  thirty-five days.  In this case, a total of thirty-six days elapsed between those two events.

¶13   The District Court ruled that this argument did not have merit.  We agree.  Section 7-5-135, MCA, sets the limitation period in which a local government must file suit on the validity of a petition for referendum or initiative; § 7-5-134, MCA, does not speak to that issue.  Appellants' consolidation of the two time frames is unsupported by statute; nor have they offered any case law in support of their position.  We hold that this action was timely filed within fourteen days of approval of  the referendum as to form as required under § 7-5-135, MCA.

ISSUE 2

¶14   Did the District Court err when it determined that Town of Whitehall Ordinance Chapter 4.00 was administrative rather than legislative and was therefore exempt from the referendum proceedings allowed under the Montana Constitution and § 7-5-131(1), MCA?

¶15   Montana's Constitution reserves to the people of this

State the powers to challenge and enact laws through the referendum and initiative processes. In Article V, "The Legislature," the Constitution provides that "The legislative power is vested in a legislature consisting of a senate and a house of representatives. The people reserve to themselves the powers of initiative and referendum." Art. V., Sec. 1, Mont. Const.

¶16 In its General Government Article, Montana's Constitution defines the initiative power at Article III, Section 4. It defines the referendum power in the following section:

> Referendum. (1) The people may approve or reject by referendum any act of the legislature except an appropriation of money. A referendum shall be held either upon order by the legislature or upon petition signed by at least five percent of the qualified electors in each of at least one-third of the legislative representative districts. The total number of signers must be at least five percent of the qualified electors of the state. A referendum petition shall be filed with the secretary of state no later than six months after adjournment of the legislature which passed the act.
> (2) An act referred to the people is in effect until suspended by petitions signed by at least 15 percent of the qualified electors in a majority of the legislative representative districts. If so suspended the act shall become operative only after it is approved at an election, the result of which has been determined and declared as provided by law.

Art. III, Sec. 5, Mont. Const.

¶17 A third reference to the powers of initiative and referendum appears under the Local Government Article. Article XI, Section 8, Mont. Const., provides:

> Initiative and referendum. The legislature shall extend the initiative and referendum powers reserved to the people by the constitution to the qualified electors of each local government unit.

As directed by Article XI, Section 8, Mont. Const., Montana's legislature has statutorily extended initiative and referendum powers to the electors of local government units:

> Right of initiative and referendum. (1) The powers of initiative and

referendum are reserved to the electors of each local government. Resolutions
and ordinances within the legislative jurisdiction and power of the governing
body of the local government, except those set out in subsection (2), may be
proposed or amended and prior resolutions and ordinances may be repealed in
the manner provided in § 7-5-132 through 7-5-137.
        (2)  The powers of initiative shall not extend to the following:
        (a)  the annual budget;
        (b)  bond proceedings, except for ordinances authorizing bonds;
        (c)  the establishment and collection of charges pledged for the payment
of principal and interest on bonds; or
        (d)  the levy of special assessments pledged for the payment of
principal and interest on bonds.

Section 7-5-131, MCA.

¶18  This Court has long recognized a distinction between legislative and administrative
or quasi-judicial acts in relation to the powers of initiative and referendum; legislative acts
have been held subject to referendum, while administrative or quasi-judicial acts have not.
In City of Billings v. Nore (1966), 148 Mont. 96, 104, 417 P.2d 458, 463, this Court
described the distinction between legislative and administrative acts as "whether the act was
one creating a new law (legislative) or executing an already existing law (administrative)."

¶19  The Appellants point out that initiative and referendum powers must be broadly
construed to maintain the maximum power in the people.  See Nicholson v. Cooney (1994),
265 Mont. 406, 411, 877 P.2d 486, 488.  Their argument continues based upon the special
concurrence to this Court's opinion in Greens at Fort Missoula v. City of Missoula (1995),
271 Mont. 398, 897 P.2d 1078.  In Greens, the issue was whether a city referendum could
validly cancel rezoning of an area then newly annexed to the City of Missoula.  The parties
debated whether rezoning was a legislative act, like zoning, or an administrative act not
subject to referendum.  The Court determined that rezoning, like zoning, is a legislative act,
and is therefore subject to referendum.  Greens, 271 Mont. at 403, 897 P.2d at 1080-81.  In
a special concurrence, Justice Nelson concluded that under

Montana's Constitution, any act of a local government body--not just a legislative act--is subject to referendum. Greens, 271 Mont. at 407, 897 P.2d at 1083-84. Justice Nelson reasoned that the reference to "any act of the legislature" in Art. III, Sec. 5, Mont. Const., does not distinguish between legislative and administrative or quasi-judicial acts in describing the powers of initiative and referendum. Greens, 271 Mont. at 407, 897 P.2d at 1083.

¶20 Local governing bodies are empowered to exercise legislative, administrative, and other powers pursuant to Article XI, Section 4, Mont. Const. Based on the concurring opinion in Greens, Appellants assert that § 7-5-131, MCA, is unconstitutional insofar as it limits the referendum power against local government to "[r]esolutions and ordinances within the legislative jurisdiction and power of the governing body of the local government . . . ."

¶21 Courts in other jurisdictions with constitutional provisions extending the power of referendum to "acts of the legislature" have recognized "act" as a term of art, meaning a bill passed by the legislature and enacted into law. See, e.g., Whittemore v. Terral (Ark. 1919), 215 S.W. 686, 687; Weldon v. Bonner County Tax Coalition (Idaho 1993), 855 P.2d 868, 875; Klosterman v. Marsh (Neb. 1966), 143 N.W.2d 744, 749; Herbring v. Brown (Or. 1919), 180 P. 328, 330. This is consistent with authority generally addressing the meaning of an "act of the legislature." See Black's Law Dictionary 25 (6th ed. 1990), defining "act" in the sense of "legislative act" as "[a]n alternative name for statutory law."

¶22 Moreover, the distinction recognized in Nore and other Montana cases between legislative acts and administrative or quasi-judicial acts vis-a-vis their subjectivity to referendum applies in virtually all other jurisdictions. The "sound rationale for limiting the referendum to legislative actions is that to permit referenda on executive and administrative actions would hamper the efficient administration of local governments." Wennerstrom v. City of Mesa (Ariz. 1991), 821 P.2d 146, 149. See also City of Idaho Springs v. Blackwell (Colo. 1987), 731 P.2d 1250, 1253; In re Supreme Court Adjudication of Initiative Petitions in Norman, Oklahoma Numbered 74-1 and 74-2 (Okla. 1975), 534 P.2d 3. The Supreme Court of Nebraska has reasoned:

    [T]o allow [the referendum] to be invoked to annul or delay executive conduct
    would destroy the efficiency necessary to the successful administration of the
    business affairs of a city.  In many cases it would entirely prevent the exercise
    of the executive power necessary to carry out the acts determined upon by the
    legislative department.  In the absence of a very clear declaration to the
    contrary it must be presumed that the power of referendum was intended to
    apply solely to the legislative powers of the city.

Read v. City of Scottsbluff (Neb. 1941), 297 N.W. 669, 671 (quoting 7 McQuillin,
Municipal Corporations, Supp. 6621, sec. 351c).

¶23  Montana's 1889 Constitution reserved to the people "power to propose laws, and to
enact or reject the same at the polls."  Art. V, Sec. 1, 1889 Montana Constitution.  No case
law under the 1889 Constitution suggests that the powers of initiative and referendum in
Montana ever extended to anything other than legislative acts.  Nor does anything in the
transcript of the proceedings of the 1972 Constitution suggest an intent to expand the power
of initiative and referendum to anything other than legislative power.  In fact, in recommending the adoption at the 1972 Montana Constitutional Convention of the referendum provision
which was adopted as Article III, Section 5, Delegate Mark Etchart stated, "This provision
is parallel to the present referendum provisions as contained in Article V, Section 1, of the
present Constitution."  1972 Mont. Const. Conv. Tr., March 18, 1972, Vol.  VII at 2717.
In short, Montana's 1972 Constitution does not contain a "very clear declaration to the
contrary," as the Nebraska court suggested is required, to the general rule that the power of
referendum is intended to apply solely to legislative powers.

¶24  Instead, as noted above, the provision by which the people retain the right of initiative
and referendum appears in the Constitutional Article on "The Legislature."  No comparable
provisions appear in the Articles concerning the Executive and the Judiciary.  Article VI,
Section 4, Mont. Const., vests the entire executive power with the governor.  There is no
reservation of executive power to the people by initiative and referendum.  Article VII,
Section 1, Mont. Const., vests the judicial power of the state in this Court, the district courts,
justice courts, and other courts that the legislature may create.

There is no reservation of judicial power to the people by initiative and referendum.

¶25  Under Article XI, Section 8, Mont. Const., the Montana Legislature is to extend to the qualified electors of local government units "the initiative and referendum powers reserved to the people by the constitution."  Even under the policy of broadly construing the powers of initiative and referendum, the legislature cannot extend to the people greater powers against local government than those which the people have reserved to themselves in the Constitution.  The powers of initiative and referendum have been reserved under the Constitution as to legislative acts only.

¶26  For these reasons, we decline to abandon the rule set forth in Nore or to adopt the position set forth in the concurring opinion in Greens.  We reaffirm that under Montana's Constitution, the people have retained the powers of initiative and referendum as to legislative acts only.  Because we so rule, the question here raised as to the constitutionality of § 7-5-131, MCA, is resolved in the statute's favor.

¶27   Our next task is to determine whether Whitehall Town Ordinance Chapter 4.00 is legislative or administrative in nature.  It is agreed that denomination of an act of local government as a resolution or as an ordinance is not dispositive as to whether the act is legislative or administrative; that determination is fact-driven.  We recognize, as suggested in the briefs and at oral argument, that guidelines in addition to those set forth in Nore will assist in making such a determination.

¶28  Counsel have pointed out, and we agree, that the expansion of the Nore standard set forth in Chouteau County v. Grossman (1977), 172 Mont. 373, 563 P.2d 1125, and Dieruf v. City of Bozeman (1977), 173 Mont. 447, 568 P.2d 127, is not of assistance.  In those cases, this Court held that local governments were performing administrative functions based upon "existing law" consisting of statutory grants of authority to local governments.  In Grossman, the existing law was a statute authorizing local governments to lay out, maintain, control and manage county roads; the Court held that this statute rendered administrative a county's decision to expend funds and accept bids to pay for paving

a road. Grossman, 172
Mont. at 378, 563 P.2d at 1128. In Dieruf, the Court held that a statute authorizing city or
county commissions to assess property owners for improvements to create off street parking
rendered administrative the City of Bozeman's adoption of an ordinance establishing a
formula for assessing property for purposes of creating an off street parking facility and a
resolution creating a special improvement district to establish that facility. Dieruf, 173 Mont.
at 451, 568 P.2d at 129-30. The rule adopted in Grossman and Dieruf renders the Nore
standard practically meaningless, because virtually all municipal actions are, either directly
or indirectly, taken pursuant to statutory authority. Therefore, to the extent that Grossman
and Dieruf stand for the rule that a local government's act is administrative based solely upon
a statutory grant of authority, we hereby overrule those cases.

¶29 The amicus brief submitted by the office of Montana's Attorney General recommends
guidelines for distinguishing between legislative and administrative acts of a local
government set forth by the Supreme Court of Kansas in Wichita v. Kansas Taxpayers
Network (Kan. 1994), 874 P.2d 667. The first guideline in Kansas Taxpayers is essentially
the distinction set forth by this Court in Nore. The other three guidelines expand upon and
add to that distinction. We hereby approve and adopt the Kansas Taxpayers guidelines for
use in Montana. The guidelines are:

    1. An ordinance that makes new law is legislative, while an ordinance that
    executes an existing law is administrative. Permanency and generality are key
    features of a legislative ordinance.

    2. Acts that declare public purpose and provide ways and means to accomplish that purpose generally may be classified as legislative. Acts that deal
    with a small segment of an overall policy question generally are administrative.

    3. Decisions which require specialized training and experience in municipal
    government and intimate knowledge of the fiscal and other affairs of a city in
    order to make a rational choice may properly be characterized as administrative, even though they may also be said to involve the establishment of a
    policy.

    4. No one act of a governing body is likely to be solely administrative or

legislative, and the operation of the initiative and referendum statute is

restricted to measures which are quite clearly and fully legislative and not

principally executive or administrative.

Kansas Taxpayers, 874 P.2d at 671-72.


¶30  Applying these guidelines to the facts of the present case, we begin with the question of whether Whitehall Town Ordinance Chapter 4.00 makes new law or executes existing law.  The Town of Whitehall argues that the ordinance executes existing laws, those being the town council's prior resolutions to seek grants and a loan to make improvements to the Whitehall water system.  In the town's view, those resolutions were its legislative acts.  We note that even a cursory examination of the applications for grants establishes that water meters were part of Whitehall's water system improvement plan.


¶31  However, Appellants claim that a view that the first-in-time act by the town council is the only "legislative" act allows for artificial manipulation by the local government and yields no meaningful distinction between legislative and administrative acts at all. Appellants argue that Whitehall's voters never had the opportunity to exercise their legislative review authority with regard to the proposed improvements, because the details of the improvements were not previously acted upon by the town council in any manner by which effective review was possible.  They point out that Ordinance Chapter 4.00 is the first act of the Whitehall Town Council which specifically adds the new requirement that water meters be installed for the users of Whitehall's water system.


¶32  In this case, we conclude that application of this first guideline does not conclusively establish whether Ordinance Chapter 4.00 is legislative or administrative.  We therefore proceed to consider the other three guidelines.


¶33  The second Kansas Taxpayers guideline asks whether the ordinance deals with a small segment of an overall policy question.  In this case, the overall question was how to improve the town's water system to provide water to consumers.  The record includes copies of Whitehall's 1994 applications for a Community Development Block Grant and for a grant

from the Treasure State Endowment Program, which explain the nature of the problem which the town was facing. Portions of the existing water system dated back to 1915. The town had had problems for a decade with low water pressure and inadequate fire flows. In 1991, the town had retained a consulting firm to perform an analysis of the water system to determine deficiencies and make recommendations for improvements. Replacing worn out and obsolete pipes and installing a new 500,000 gallon water reservoir were two aspects of the proposed improvements to Whitehall's water system to increase water capacity and pressure. Installation of water meters to encourage water conservation was another.

¶34 As mentioned above, in 1992 the PSC had directed Whitehall to explore options for reducing its consumption of water, including the use of water meters. Whitehall's water system used more than three times as much water as did the system of a comparable Montana town where water was metered. The use of water meters had been proposed and specifically identified as a goal in the project summaries in both the Treasure State Endowment Program Grant application and the Community Development Block Grant application. We conclude that the decision to install water meters was a small segment of an overall policy question.

¶35 As to the third guideline, the most effective means of operating and managing a city-wide water system reasonably fits within the context of decisions that require specialized knowledge and experience with respect to city management. In Kansas Taxpayers, which involved an ordinance concerning billing for a municipality's storm water utility system, the court stated:

> The physical structure of the system, maintenance, and fee assessment and
> collection all fit within the purview of the City's expertise. The City already
> owns and maintains the existing system; [the challenged ordinance] also fits
> within a city's expertise in terms of fiscal management.

Kansas Taxpayers, 874 P.2d at 672. The same may be said here. The best method of billing for the use of water services is clearly a part of a larger decision-making function requiring specialized knowledge and experience with respect to city management.

¶36  While the record does not indicate that prior to the enactment of Whitehall Town
Ordinance Chapter 4.00, the Whitehall Town Council had voted upon the singular issue of
installing water meters, the record does establish that the proposal to install water meters had
been endorsed as part of several acts of the town council, specifically the resolutions to
submit the two grant applications.  The town has submitted into the record copies of
numerous notices of town meetings in which water meters were listed as a topic of
discussion.

¶37  Among those, an April 11, 1994 public hearing included a "Review of [the]
Community Development Block Grant Program," a "Review [of] General Needs," and
solicitation of comments from the public.  That public hearing preceded the town council's
April 14, 1994 meeting which included agenda items on finalizing the financial plans for the
water project and grant applications plans, and its May 23,1994 resolution approving the
submission of the application for a Community Development Block Grant.  The Community
Development Block Grant application included a statement in the initial project description
that "water meters will be installed on individual residential and commercial services to
encourage conservation of water," and, in the body of the application, several paragraphs on
the water meter plan.

¶38  Similarly, a public meeting announced in two area newspapers, the Whitehall Ledger
and the Montana Standard, was held on March 23, 1995, "to provide the community with
updated information on the proposed water improvements and the results of the grant
applications."  Thereafter, the notice of the July 10, 1995 town council meeting included as
an agenda item the "TSEP contract," which grant contract was then approved by resolution
of the town council and subsequently entered into by the mayor on the town's behalf on
September 4, 1995.  The project summary included in the TSEP (Treasure State Endowment
Program) grant application stated that "water meters will be installed on individual
residential and commercial services to encourage conservation of water."

¶39  The parties have stipulated that various citizens of Whitehall had previously voiced

objections, either informally, or not properly formalized, concerning the installation of water meters. The existence of the previous public hearings and town council resolutions and the previous objections to the installation of water meters confirms that this issue was not addressed for the first time with the adoption of Whitehall Town Ordinance Chapter 4.00. We are thus led to the conclusion that Whitehall Town Ordinance Chapter 4.00 was not "quite clearly and fully legislative" under the fourth Kansas Taxpayers guideline but was, to at least some extent, an administrative act to carry out previous plans to which the council had agreed.

¶40 Using the guidelines set forth in Kansas Taxpayers and now adopted by this Court, we conclude that the enactment of Whitehall Town Ordinance Chapter 4.00 was an administrative act and was accordingly not subject to referendum. Having so determined, we hold that the District Court did not err in declaring the referendum invalid. We therefore need not address the issue raised on appeal concerning whether the referendum was unconstitutional because it would substantially interfere with contracts.

¶41 We do not address the statutory debt limitation issue raised at the end of Appellants' opening brief because the issue was not raised before the District Court. See Kapner, Wolfberg & Assoc. v. Blue Cross (1995), 270 Mont. 283, 286, 891 P.2d 530, 532.

¶42 We affirm the decision of the District Court.

/S/ J. A. TURNAGE

We concur:

/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ WILLIAM E. HUNT, SR.
/S/ TERRY N. TRIEWEILER
/S/ KARLA M. GRAY

Justice James C. Nelson specially concurs.

¶44 Having now had the benefit of extensive briefing and oral argument on the issue, I agree that my concurrence in Greens at Fort Missoula v. City of Missoula (1995), 271 Mont. 398, 897 P.2d 1078, did not correctly interpret the phrase "any act

of the legislature."  I am
satisfied that the word "act" as used in that phrase was clearly
contemplated by the framers
of Montana's Constitution to be synonymous with "law" or with a
bill which has been
enacted into law.  Moreover, in the case at bar, it is also clear
that the electors' constitutional
right of referendum on the matter of the water meters was preserved
in that the electors,
having been given due notice and opportunity to be heard (as set
out in the Court's opinion),
had the ability to challenge by referendum the various
water-improvement-project resolutions
passed by the Whitehall Town Council.  In my view, Ordinance 4.00
simply implemented
administratively the legislative act that had been accomplished in
the resolutions.
Accordingly, I concur.

/S/  JAMES C. NELSON