CHIEF JUSTICE McGRATH
dissenting.
¶51 While I concur with the majority’s resolution as to Issue 1, I *476 dissent as to the resolution of Issue 2. The Whitefish City Council’s Resolution 10-46 was a legislative enactment and was thus subject to referendum by the voters.
¶52 The distinction between legislative and administrative acts is essentially whether the act creates new law (legislative) or executes an already existing law (administrative). Whitehall v. Preece, 1998 MT 53, ¶ 17, 288 Mont. 55, 956 P.2d 743. The majority’s decision that Resolution 10-46 was an administrative measure derives from application of the four factors in the Whitehall case, which in turn were adopted from the Kansas decision in Wichita v. Kan. Taxpayers Network, 874 P.2d 667 (Kan. 1994). The problem with the four factors is that they are vague, confusing, and awkward to apply. Even the Kansas Supreme Court has since found that identifying the fine between administrative and legislative actions is difficult. In a subsequent decision that Court decided that few actions are ever solely administrative or solely legislative; that the four factors set out in Kansas Taxpayers should be modified (by recognizing that the fourth factor is a statement of policy that is not helpful as a guideline for evaluating a specific set of facts); and by adopting a new fourth factor involving delegated decision-making power. McAlister v. City of Fairway, 212 P.3d 184, 194-95 (Kan. 2009).
¶53 The four (or now three) Kansas Taxpayer/Whitehall factors are also confusing, and can unreasonably restrict the voters’ right to participate in the referendum process. Factor 1 states, in part, that “permanency and generality are key features of a legislative ordinance.” While that may be true, temporary measures may be wholly legislative as well. The Montana Legislature, for example, periodically enacts statutes that will expire on a certain date or will become effective only upon the happening of a certain event. See e.g. § 27-1-703, MCA, which is designated as “temporary” and the second § 27-1-703, MCA, set to become “effective on occurrence of contingency.” When the people, through referendum, exercise the legislative power, that power should not be more limited than the power exercised by the Legislature. See Carter v. Lehi City, 269 P.3d 141, ¶ 31 (Utah 2012) (“The people’s initiative power reaches to the full extent of the legislative power....”).
¶54 Factor 2 states that provisions “that deal with a small segment of an overall policy question generally are administrative.” This does not even seem to be generally true, since statutes enacted by the Legislature frequently deal with small segments of larger groups or larger policy questions. See e.g. § 39-71-117(l)(d), MCA, which revised *477 the Workers Compensation Act definitions of “employer” so as to bring within the umbrella of the Act “a religious corporation, religious organization, or religious trust receiving remuneration from nonmembers for agricultural production, manufacturing, or a construction project conducted by its members on or off the property of the religious corporation, religious organization or religious trust.” The representative who introduced this legislation, as well as other legislators, freely conceded that the amendment was directed specifically toward Hutterite religious colonies, and unquestionably and extremely small segment of state “employers.” (Mont. H. Comm. on Bus. & Labor, Hearing on H.B. 119, 61st Legis., Reg. Sess. (Jan. 8, 2009); Mont. Sen. Comm. on Bus., Labor, & Econ. Affairs, Hearing on H. Bill 119, 61st Legis., Reg. Sess. (Mar. 5,2009); Big Sky Colony, Inc. v. Mont. Dep’t of Labor & Indust., 2012 MT 320, ¶¶ 86-90, 368 Mont. 66, 291 P.3d 1231 (Rice, Nelson & Cotter, JJ., dissenting). See also Carter, ¶ 52 (“Legislation usually applies to more than a few people but there are circumstances where legislation may properly extend to only one or a few individuals. Such a law could still be ‘legislative’ where it (1) is based on general policy concerns rather than individual circumstances and (2) governs ‘all future cases falling under its provisions’ and not just specified individuals.” (internal citations and quotations omitted)).
¶55 More importantly, however, Factor 2 does not allow for consideration of amendatory measures, such as Resolution 10-46. Looking again to the Montana Legislature, it routinely enacts statutes which are clearly legislative acts, but which are amended in future years in ways large or small. These amendatory actions are no less legislative than the ones that enacted the original entire statute. See e.g. Margolis v. District Court, 638 P.2d 297 (Colo. 1981) (where an original act is legislative, there is a presumption that an amendment to that act is likewise legislative); State ex rel. Zonders v. Delaware County Bd. of Elections, 630 N.E.2d 313, 317 (Ohio 1994) (“Generally, the adoption of a zoning amendment, like the enactment of the original zoning ordinance, is a legislative act which is subject to referendum.”). Factor 2 is therefore misleading and incorrect. An action that amends a prior legislative action will almost always also be a legislative action. These same considerations and criticisms apply to the first sentence of Factor 1 as well, wherein it states that an action which “makes new law is legislative.” While generally true, that statement overlooks amendatory measures and confuses the situation when amendatory measures are being considered.
*478 ¶56 Factor 3 seems to be describing a situation in which governmental officials are called upon to apply training, experience and specialized knowledge to make decisions in specific situations as between several alternatives. This could describe discretionary decisions such as settlement of a lawsuit.
¶57 However, the fact that Resolution 10-46 was adopted as part of the settlement of a lawsuit with the County has little or nothing to do with whether the resolution itself is administrative or legislative. While the decision to settle the lawsuit per se may be administrative, it was undertaken in the separate Resolution 10-47. There is no reason why the City could not agree, as it did, to undertake a legislative act as part of the consideration for the settlement.[1] That is exactly what it did here. The City, as part of the settlement, agreed to approve and adopt the Restatement of Cooperative Interlocal Agreement with the County, making two important changes as to the term of the agreement and withdrawal from the agreement. Whether the Resolution is viewed as an action re-adopting the Interlocal Agreement or as an action amending the Interlocal Agreement, it is still a legislative measure.
¶58 The courts that have considered this administrative act/legislative act divide agree, as does the majority in this case, that the determination is ultimately “fact driven.” Opinion, ¶ 33. Because of the fact driven nature of such determinations, some courts have simply adopted a case-by-case approach, guided by underlying principles of separation of powers and historical examples of recognized legislative power, when considering the legislative/administrative question. See Vagneur v. City of Aspen, 295 P.3d 493, ¶ 48 (Colo. 2013) (“Whether a proposed initiative is legislative or administrative remains a case-by-case inquiry. Although we give consideration to each of the tests we have described, no single test is necessarily controlling; rather, the principles underlying those tests must guide the overall determination of whether a proposed initiative is legislative or administrative.”); Carter, ¶ 75 (recognizing that “[i]t will not always be easy to classify [for instance] a site-specific zoning amendment as faffing clearly on the legislative or executive side of the line between the two.”).
*479 ¶59 The facts of this case show the unmistakable legislative nature of the act at issue. The City Council of Whitefish adopted Resolution 10-46, which by its title, approved the “restatement” of the City-County Interlocal Agreement concerning zoning. There can be no argument that adoption of an interlocal agreement is a legislative act, because the agreement gave the City authority to zone in the donut, or, phrased alternatively, created new law. Since adoption of a zoning ordinance would be a legislative act, it follows that an act granting such authority must also be a legislative act. Further, even if Resolution 10-46 simply adopted the agreement again, it would not lose its legislative nature.
¶60 Resolution 10-46 adopted two significant policy changes in the agreement, to provide for a five-year term and to allow withdrawal of a party. As noted above, amendment of a prior legislative enactment is itself a legislative act.
¶61 The facts here admit to but one conclusion, that Resolution 10-46 was a legislative measure. I dissent.
JUSTICES COTTER and WHEAT join the Dissent of CHIEF justice McGrath.

 It is not unusual for the Montana Legislature to enact legislation as part of the settlement of a lawsuit. For example, that occurred when the Legislature enacted a statewide system for defense ofindigent defendants charged with crimes. See § 47-1-101 et seq., MCA; and James Park Taylor, Bespeaking Justice: A History ofindigent Defense in Montana, 68 Mont. L. Rev. 363, 381-84 (2007).