NO.  94-395

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

THE GREENS AT FORT MISSOULA, LLC,

        Petitioner and Appellant,

    -v-

CITY OF MISSOULA,

        Respondent,

    and

SAVE THE FORT, INC.

        Intervenor.

FILED

JUN 19 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
              In and for the County of Missoula,
              The Honorable Jeffrey Langton, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Robert J. Phillips, Phillips & Williams, Missoula,
        Montana

        For Respondent:

        Jim Nugent, Missoula City Attorney, Missoula,
        Montana; Mark S. Connell, Connell, Beers &
        Alterowitz, Missoula, Montana


                            Heard: April 7, 1995

                        Submitted:  April 18, 1995

                          Decided:  June 19, 1995

Filed:

_____
            Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This case is before us on grant of summary judgment to City of Missoula and Save the Fort, Inc. by the Fourth Judicial District court, Missoula County. We affirm.

We consider the following issue:

Did the District Court err in granting summary judgment to the City of Missoula and Save the Fort based upon the court's ruling that a City-wide referendum concerning Ordinance No. 2877 was an appropriate function of the power of referendum?

This action involves an 82.31 acre tract of land known as Fort Missoula located in Missoula County. Fort Missoula U.S. Military Reservation was established in 1877 and has served many purposes of historical significance over the years. In 1966, the federal government conveyed this property to the State Board of Education for the use and benefit of the University of Montana. In 1990, the University conveyed the property title to the University of Montana Foundation, a non-profit corporation which acts as agent or trustee for the University by coordinating all fund raising for that institution. The Foundation then sold the property to the Green's predecessor in interest, Divot Development, for $450,000.

Divot began action to have the bulk of the property annexed to the City and to have the City then zone it. On December 13, 1993, the City annexed the property. At that point the tract became an unzoned part of the City.

Divot had requested zoning of the tract, asking that the property be rezoned as P-I (Open Space District) [with a Planned

Unit Development (PUD) overlay]. The County had originally zoned the tract as CP-I (County Zone.) On December 20, 1993, the Missoula City Council enacted Ordinance No. 2877, which called for residential housing as well as carefully designed protection for historical buildings and open areas on the property. Following passage of this ordinance, a group of Missoula County and City residents formed under the name "Save the Fort" and circulated a petition in the City with the final outcome projected to be a referendum which would repeal the ordinance. On January 17, 1994, the petition was filed with the Missoula County Elections Office.

The Greens filed a declaratory judgment action against respondent City of Missoula, seeking to have the court refuse the referendum process for this issue.

The District Court permitted the community group Save the Fort, Inc. to intervene in the action. The Greens, the City, and Save the Fort all moved for summary judgment. The motions were briefed and argued on May 13, 1994. The court ruled from the bench that the Greens' motion was denied and the City's and the Intervenors' motions were granted. The court then issued an Order and Opinion on May 24, 1994. On Tuesday, June 7, 1994, the City of Missoula electorate voted to repeal the City of Missoula Zoning Ordinance No. 2877 as above described.

The Greens commenced this action against the City of Missoula and Save the Fort was allowed to intervene permissively.

Did the District Court err in granting summary judgment to the City of Missoula and Save the Fort based upon the court's ruling

3

that a City-wide referendum concerning Ordinance No. 2877 was an appropriate function of the power of referendum?

The Greens argue that Ordinance No. 2877 rezoned the property in question and, therefore, the action was administrative and not legislative. According to the Greens, administrative and quasi-judicial actions by a governmental body are not subject to referendum, only legislative actions can spawn referendum. Further, the Greens argue that our holding in City of Shelby v. Sandholm (1984), 208 Mont. 77, 676 P.2d 178, controls and makes the repeal of Ordinance No. 2877 unconstitutional because not all of the electors who participated in the referendum are affected by the ordinance. The Greens contend that the District Court gave a new expansive reading of the referendum statute in opposition to the prevailing case law in Montana.

The City argues that the District Court should be affirmed because Montana's statutes and Constitution encourage public participation in municipal government affairs and decisions. The City contends that the facts of this case make it unique when compared to past Montana cases considering the right of referendum. Also, the City states that the property in question has never been zoned by the City. According to the City, both zoning and rezoning are legislative acts which permit referendum.

Save the Fort argues that the Montana Constitution permits referendum on any enactment by the legislature except an act of appropriation.

The District Court determined that the act of zoning the newly

4

annexed City property was legislative in nature and, therefore, subject to referendum by the electorate. The District Court found that no substantive difference existed between initial zoning and amendatory rezoning:

> Whether Ordinance No. 2877 was a zoning ordinance, as the Court concludes, or a rezoning makes no substantive difference. In substance the questioned ordinance was the original zoning classification of this land by the City, and it was a legislative act. . . . Here, the City Council has made a new land use policy, in absence of an established municipal land use policy, for a sizeable parcel of previously undeveloped property on the edge of the urban area. The ordinance in question signifies both a new zoning policy as to this land and a fundamental change from pre-existing county zoning and guidelines for development of this area. . The Court does not agree that subjecting original zoning classification ordinances or amendatory rezoning ordinances to referendum powers will lead to significant delays and undue burdens on development. Minor zoning decisions which do not excite broad public interest in a city will be unlikely to generate the degree of controversy necessary to place the issue before the voters. The very fact that this is the first known case of this nature, despite Montana's long history of municipal zoning, is itself indicative that it would not frequently arise. (Emphasis added.)

The 1972 Constitution included a provision that made the people's right to a referendum applicable to the actions of local governments. Art. III, Sec. 5 and Art. XI, Sec. 8, Mont.Const. (1972). In response, the 1977 legislature passed a bill which created the following statutory directive to the electorate of the state:

> **Right of initiative and referendum.** (1) **The powers** of initiative and referendum are reserved to the electors of each local government. Resolutions and ordinances within the legislative jurisdiction and power of the governing body of the local government, except those set out in subsection (2), may be proposed or amended and prior resolutions and ordinances may be repealed in the manner provided in 7-5-132 through 7-5-137.
> (2) The powers of initiative shall not extend to

the following:
(a) the annual budget;
(b) bond processings, except for ordinances authorizing bonds;
(c) the establishment and collection of charges pledged for the payment of principal and interest on bonds; or
(d) the levy of special assessments pledged for the payment of principal and interest on bonds. (Emphasis added.)

Section 7-5-131, MCA. The statute permits the electorate to propose, amend, or repeal ordinances and resolutions. The statute does not distinguish between zoning ordinances and rezoning ordinances. It simply refers to "prior ordinances." A prior ordinance could either be a zoning or rezoning ordinance. Thus, the District Court correctly interpreted this statute to mean that referendum by the people was appropriate for both zoning ordinances and "amended" zoning ordinances (or rezoning). We will not insert into statutes something that is not contained therein. Section 1-2-101, MCA. This is not an expansive reading of the statute, but one that is taken from the clear meaning of the language used.

The legislature did not provide within the statute any differences in procedure to be used with public involvement in zoning as opposed to rezoning ordinances. Both acts are within the "legislative jurisdiction and power of the Local governing body" and are, therefore, subject to the referendum power of the people.

The Greens argue that we must follow the precedent of Lowe v. City of Missoula (1974), 165 Mont. 38, 525 P.2d 551, which stated that there is a "sound" distinction between zoning and rezoning. Lowe, 165 Mont. at 44, 525 P.2d at 554. We first point out that the 1977 statute which we are interpreting in this case did not

6

differentiate between zoning and rezoning for referendum purposes. In addition, in Schanz v. City of Billings (1979), 182 Mont. 328, 597 P.2d 67, we expressly departed from the holding in Lowe:

> A review of authorities reveals no elemental distinction between the act of "zoning" and the act of "rezoning." A rezoning ordinance, like a zoning ordinance, is a legislative enactment, and is entitled to the presumption of validity and reasonableness. [Citations omitted.]
> [W]e depart here from the distinction expressed in Lowe between the acts of zoning and rezoning .

Schanz, 182 Mont. at 335, 597 P.2d at 71. In order to eliminate any confusion, we conclude it is necessary to overrule the contradictory language in Lowe. We expressly overrule the following language:

> There is under Montana statutes and case law a sound distinction between "zoning" and the act of "rezoning" or granting or refusing a variance. The former constitutes a legislative act while the latter is more of an administrative or quasi-judicial act in applying provisions of existing ordinance or law.

Lowe, 165 Mont. at 44, 525 P.2d at 554. In doing so, we do not express any opinion on granting or refusing variances.

Also, the Greens argue that the repeal of Ordinance No. 2877 is unconstitutional under the holding of this Court in City of Shelby v. Sandholm (1984), 208 Mont. 77, 676 P.2d 178. However, the Sandholm case can be distinguished from the case before us.

Sandholm dealt with a vote by all of the electorate in the city of Shelby with regard to one special improvement district which constituted only part of the city. Special Improvement Districts (SID's) are defined statutorily as improvements that "will be of special benefit to the property within the boundaries

7

of any district created pursuant to the provisions of this part."
(Emphasis added.) Section 7-12-1102, MCA. SID's do not affect an
entire City.

Perhaps an example would best exemplify the distinction found
between the unique facts of this case and the facts of the Sandholm
holding. In Sandholm, we held that an entire city could not vote
on the propriety of one SID because the entire city was not
physically and financially affected by that SID:

> But here the special improvement district encompasses
> less than all of the real property in the City, and there
> are qualified voters in the City who could vote on the
> referendum but who are not physically or financially
> affected by the special improvement district. Clearly,
> the property owners who will be benefited by the
> improvement, as well as assessed for the costs of the
> project, should control whether the project succeeds or
> fails. Section 7-12-4110, MCA, provides the protest
> procedure for those affected by the special improvement
> district, but the protest here was insufficient because
> it did not represent 50 percent or more of the property
> within the district, and the trial court so found.

Sandholm, 208 Mont. at 80, 676 P.2d at 179. We are unable to say
in the present case that only part of the City electorate would be
affected by what transpires on this tract of land. The land in
question here has historical and social significance for the entire
City. The public has used this property for many years for various
community-wide functions. Were the land to become used for the
multitude of private residential housing units that are planned,
the entire community could be affected by the added pressures--
financial, social, and environmental. Thus, the community as a
whole is affected by what happens to this property, despite not
every member of the community abutting the property in question.

8

In recognition of this, the District Court stated in its Opinion:

> The Court does not accept the myopic view of the developer that this action should be viewed as a single quasi-judicial zoning decision affecting one landowner's private property. The proposed construction of housing for several hundred people in what has historically been publicly accessible open space on the edge of the City affects prospective development residents, public services and schools, the city housing market, nearby residents and facilities, city traffic and development patterns. . . The number of landowners whose property is being zoned **is** not **material to** the issue at hand.

It is the proposed zoning's potential effect upon the City that distinguishes the present case from Sandholm. The entire community of Shelby was not affected by the storm sewers in one SID. The SID created in Sandholm had no significance or importance to anyone other than the landowners who would be required to pay for the proposed storm sewers.

As a result, we held in Sandholm as follows:

> We agree, under the facts of this case, that the City's action creating a special improvement district, was not subject to referendum. (Emphasis added.)

Sandholm, 208 Mont. at 79, 676 P.2d at 179. While the foregoing conclusion is appropriate as to Sandholm, we further conclude that it cannot be applied to the facts of this case. Under the facts of this case, we need do nothing beyond interpreting § 7-5-131, MCA, as including both zoning and rezoning "ordinances" under the umbrella of the "legislative jurisdiction and power of the governing body of the local government." Such an inclusion entitles the electorate of Missoula to subject the applicable "ordinance" to a referendum vote in order to repeal the ordinance.

9

The distinction between administrative/quasi-judicial acts and those that are legislative need not concern us under the facts of this case. As quoted above, Schanz determined that a rezoning ordinance, like a zoning ordinance, is a legislative enactment and that there is no distinction between the act of zoning and the act of rezoning. Section 7-5-131, MCA, makes no distinction between zoning and rezoning with regard to the referendum power of the people. As pointed out in Schanz, both a zoning ordinance and a rezoning ordinance are legislative enactments. As a result, we do not find it necessary to attempt to distinguish between a zoning and rezoning ordinance for referendum purposes.

We conclude that, under the facts of this case, Ordinance 2877 is subject to the people's referendum power pursuant to § 7-5-131, MCA. We do not here consider whether this statute is narrower than the constitutional directives that engendered it, as that must remain for some future case. We hold that the District Court did not err in allowing the June 7, 1994 voter referendum concerning the City zoning of Fort Missoula.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

Justice James C. Nelson specially concurs.

I concur in the result of our opinion but not in our rationale. Basically, we affirm the District Court because we conclude that the ordinance at issue here is a zoning ordinance and that zoning and rezoning are indistinct, both being legislative enactments subject to the right of referendum.

While I do not disagree with those conclusions as far as they go, our opinion, by default, perpetuates the long-articulated notion relied upon by the District Court and discussed in other cases in Montana that acts of the legislative body which are characterized as "legislative" are subject to referendum, while "administrative" or "quasi-judicial" acts of that body are not. See, for example, Carlson v. City of Helena (1909), 39 Mont. 82, 102 P. 39; Allen v. City of Butte (1918), 55 Mont. 205, 175 P. 595; City of Billings v. Nore (1966), 148 Mont. 96, 417 P.2d 458; Chouteau County v. Grossman (1977), 172 Mont. 373, 563 P.2d 1125; Dieruf v. City of Bozeman (1977), 173 Mont. 447, 568 P.2d 127; Lowe v. City of Missoula (1974), 165 Mont. 38, 525 P.2d 551; Little v. Board of County Commissioners (1981), 193 Mont. 334, 631 P.2d 1282; Schanz v. City of Billings (1979), 182 Mont. 328, 597 P.2d 67. It is with that proposition that I disagree.

Rather than perpetuate a fiction that is without constitutional validity, I would simply hold that § 7-5-131, MCA, is unconstitutional as being in violation of Article III, Section 5 of the Montana Constitution to the extent that the statute restricts the power of referendum to "legislative" acts of the

11

local governing body.

It is axiomatic that the Constitution is the supreme law of the state, Associated Press v. Bd. of Public Educ. (1991), *246 Mont. 386, 391, 804* P.2d 376, 379, and that constitutional provisions are conclusive upon the legislature and prevent the enactment of any law which extinguishes or limits the powers conferred by them. Noll v. City of Bozeman (1975), 166 Mont. 504, *507, 534* P.2d 880, 881.

> To determine the meaning of a constitutional provision we employ the same rules of construction employed to construe statutes. The intent of the framers of a constitutional provision is controlling. The intent should be determined from the plain meaning of the words used. If that is possible we apply no other means of interpretation. (Citations omitted.)

Great Falls Tribune v. Public Schools (1992), 255 Mont. 125, 128-29, 841 P.2d 502, 504. We are to simply "ascertain the meaning of the Constitution as written, neither to add to nor to subtract from, neither to delete nor to distort." Rankin v. Love (1951), 125 Mont. 184, 188, 232 P.2d 998, 1000.

In Article V, Section 1, of the Montana Constitution the people expressly reserved unto themselves the power of referendum. In furtherance of that reservation of power, the language of Article III, Section 5, of the Montana Constitution is unambiguous and explicit.

> Section 5. Referendum. (1) The people may approve or reject by referendum any act *of the legislature* except an appropriation of money. . . (Emphasis added.)

As that language of the Constitution clearly provides, the people of Montana reserved unto themselves the power to approve or to

reject by referendum any *act of the legislature* -- not simply "legislative' acts, but any acts, including "administrative" acts and "quasi-judicial" acts. Moreover, at Article XI, Section 8, the people directed the legislature to extend the ". . referendum powers reserved to the people by the constitution to the qualified electors of each local government unit."

While § 7-5-131, MCA, was enacted in an attempt to fulfill that latter constitutional mandate, the statute, nonetheless, restricts the referendum powers extended to the people to "[r]esolutions and ordinances within the *legislative jurisdiction and* power *of* the *governing body* of the local government, except as set out in subsection (2). . ." subsection (2) being not at issue here. (Emphasis added.) Unfortunately that language, fortified by numerous decisions of this Court cited above, has perpetuated the notion that "legislative" acts, resolutions and ordinances are subject to approval or rejection by referendum, while "administrative" or "quasi judicial" acts are not. In fact and in law, the Constitution makes no such distinction.

In our interpretations of Article III, Section 5, we have stated that we are guided by the principle that the "referendum provisions of the Constitution should be broadly construed to maintain the maximum power in the people . . ." Chouteau County versus Grossman (1977), 172 Mont. 373, 378, 563 P.2d 1125, 1128; Nicholson v. Cooney (1994), 265 Mont. 406, 411, 877 P.2d 486, 488. Yet, in this case and in the various other legislative act versus administrative act cases cited above, we have lost sight of that

13

principle and have, to the contrary, narrowed the broad power of referendum reserved in the people by restricting that power to "legislative" acts. Certainly, if the people had wanted to limit their power of referendum to "legislative" acts, they could have done so, as they clearly did with respect to "appropriations of money." See Art. III, Sec. 5, Mont.Const.

No legislative act versus administrative or quasi judicial act distinction appears in the language of the Constitution, and it is improper and in violation of our well established rules of construction to read such a provision into that document. Section 7-5-131, MCA, restricts the constitutional right of the people to approve or reject by referendum any *act* of the governing body of the local government guaranteed by Article III, Section 5 of the Montana Constitution. To that extent, the statute is in derogation of the Constitution and, therefore, cannot stand. The District Court, and now this Court, have arrived at the right result but for the wrong reason. In the former I concur; in the latter I cannot.

_____
Justice

Justices Karla M. Gray and W. William Leaphart join in the foregoing special concurrence.

_____

_____
Justices

14

Justice Terry N. Trieweiler specially concurring.

I concur with the majority opinion based on the oft-stated principle that "it is elementary that courts should avoid constitutional questions if an issue can be resolved otherwise." *Common Cause v. Statutory Committee* (1994), 263 Mont. 324, 329, 868 P.2d 604, 607 *(citing Wolf v. Montana Dept. of Labor and Industry* (1992), 255 Mont. 336, 339, 843 P.2d 338, 340).

I do not, by concurring in the majority opinion, mean to infer that I necessarily disagree with anything said in the concurring opinion of Justice James C. Nelson.

_____
Justice

15

June 19, 1995

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Robert J. Phillips, Esq.
Phillips & Williams, P.C.
283 West Front, Ste. 301
Missoula, MT 59802

Jim Nugent
Missoula City Attorney
435 Ryman
Missoula, MT 59802

Mark S. Connell, Esq.
Connell, Beers & Alterowitz
P.O. Box 7307
Missoula, MT 59807

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

B  Y  :
Deputy