FILED

06/23/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0498

DA 25-0498

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 134

TREASURE COUNTY, MONTANA,

      Plaintiff and Appellee,

  v.

RUTH LAURA EDLUND,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Sixteenth Judicial District,
In and For the County of Treasure, Cause No. DV-2024-06
Honorable Rennie L. Wittman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Ruth Laura Edlund, Self-Represented, Hysham, Montana

      For Appellee:

         Susan B. Swimley, Swimley Law Firm, Bozeman, Montana

         Tara DePuy, Attorney at Law, PLLC, Livingston, Montana

Submitted on Briefs:  April 29, 2026

Decided:  June 23, 2026

Filed:

_____
               Clerk

Justice Katherine M. Bidegaray delivered the Opinion of the Court.

¶1    Ruth Laura Edlund appeals the April 2025 order of the Montana Sixteenth Judicial District Court, Treasure County, denying her motion for partial summary judgment and granting the motion of Treasure County, by and through its Board of County Commissioners (the County), for summary judgment declaring Edlund's proposed county ordinance invalid.  We address the following restated issues:

1. *Whether the District Court correctly concluded that Edlund's proposed ordinance was invalid under § 7-5-135, MCA.*

2. *Whether the District Court issued an advisory opinion.*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    On June 4, 2024, Edlund submitted to the County a petition for an election on a proposed citizen initiative.  The proposed initiative sought voter approval of a county ordinance "to outline a permitting process for wind energy conversion systems" (WECS) in Treasure County.  Among other things, the ordinance would apply to WECS over 100 feet tall or producing 250 kilowatts per hour or more, and would regulate setbacks, audible sound, ice-throw, shadow-flicker, water supplies, lighting, tower height, facility finish, and facility location.  The ordinance would also govern wildlife impacts, abandonment and site remediation, timelines for construction, required liability insurance, and county indemnification.  The ordinance would provide for a permitting process, including application requirements, notice to adjoining property owners, an opportunity for public hearing and comment on initial application, requests to extend construction periods,

2

modifications of existing permits, and permit approval by the Board of County Commissioners. The ordinance would provide for an appeal process from permit denial limited to specific classes of aggrieved parties. Finally, the ordinance would impose a $10,000 per-day fine for non-compliance, as well as permit denial/revocation and/or facility decommissioning. The ordinance purported to regulate WECS "while providing a balance between private interests and public concerns."

¶3 On June 26, 2024, the County sent Edlund notice of approval of the petition as to form. In the letter, the County noted a citation error. Edlund's ordinance quoted language from § 7-5-2101, MCA ("general authority of county commissioners"), as authority for the ordinance, but mis-cited § 7-5-201, MCA ("operation of self-government consolidated units of local government"), so the County suggested she correct the citation. The letter also advised Edlund that the County intended to challenge the validity and constitutionality of the proposed action under § 7-5-135, MCA (2023).[1]

¶4 On July 3, 2024, the County filed a district court "Complaint for Declaratory Relief" pursuant to §§ 7-5-135 and 27-8-201, et seq., MCA, seeking a declaratory judgment that Edlund's proposed ordinance was invalid and unconstitutional.

¶5 On July 5, 2024, Edlund sent the County a letter withdrawing her June 4, 2024 petition and submitting a new petition that incorporated some minor revisions, including correcting the citation to § 7-5-2101, MCA, and adding a citation to § 7-5-131, MCA (2023) ("right of initiative and referendum"), as authority for the ordinance. On July 26,

---

[1] In 2025, the Legislature repealed §§ 7-5-132, -133, -134, and -135, MCA, and amended § 7-5-131, MCA. If not otherwise noted, all references to those statutes are to the 2023 versions.

2024, the County notified Edlund it had approved the petition as to form. The County again advised it would challenge the proposed action under § 7-5-135, MCA.

¶6 On August 1, 2024, the County filed an "Amended Complaint for Declaratory Relief" pursuant to §§ 7-5-135 and 27-8-201, et seq., MCA, again seeking a declaratory judgment that Edlund's proposed ordinance was invalid and unconstitutional. As pertinent, the County alleged that the proposed ordinance:

(1)     was invalid because it purported to regulate land use under the County's "general powers" where the County's authority to limit, restrict, and control the use of land was specifically prescribed by Title 76, chapter 2, parts 1 and 2, MCA (citizen- and county-initiated zoning);

(2)     was invalid because it purported to regulate land use in ways governed by and/or contrary to other existing laws; and

(3)     was unconstitutional because it purported to regulate land use without any opportunity for public comment or participation in violation of constitutional right to know, right to participate, and regulatory-takings principles.

¶7 On August 29, 2024, Edlund answered, generally denying the County's allegations and claiming that the County's suit was meant to challenge the constitutionality of the citizen-initiative process and limit the subject matter of proposed citizen initiatives. In her answer, she asked for a declaration that the ordinance was valid and constitutional in its entirety. To the extent any portion was invalid or unconstitutional, Edlund asked the court to sever those portions pursuant to the ordinance's severability clause.

¶8 The District Court set a trial schedule. After discovery, Edlund filed a "Motion for Partial Summary Judgment Regarding Constitutionality of Proposed Ordinance" in February 2025. Acknowledging that either invalidity or unconstitutionality of the proposed ordinance was dispositive under § 7-5-135, MCA, Edlund urged the court to resolve

4

constitutionality before reaching validity because doing so "would dispose of th[e] entire action and also act as a bar to any future local initiatives on the subject."[2] In turn, Edlund said the proposed ordinance was constitutional because: (1) "the County has the power to adopt and enforce regulations . . . that affect the use of land"; (2) § 7-5-131, MCA, places no limitations on land-use subject matter; (3) the ordinance substantially complied with the County's growth policy; and (4) the power of initiative is not constrained by constitutional rights to know and participate and, in any event, the petition and election processes provided opportunity for public participation. Conversely, she argued that reading § 7-5-131, MCA, to exclude citizen-initiated ordinances regulating land use would unconstitutionally constrain the people's power of initiative.

¶9 A few days later, the County filed a "Motion for Summary Judgment." In it, the County denied that its § 7-5-135, MCA, action was a challenge to the citizen-initiative process; instead, the action was to determine whether Edlund's proposed ordinance would be valid and constitutional if made law, a question which necessarily encompassed the ordinance's subject matter. *See Ravalli Cnty. v. Erickson*, 2004 MT 35, ¶ 15, 320 Mont. 31, 85 P.3d 772. The County reasserted that the ordinance was invalid and unconstitutional for all the reasons stated in its complaint, including, as pertinent, that it purported to regulate land use under the County's general powers where Title 76, chapter 2, parts 1 and 2, MCA, specifically provide for citizen- and county-initiated land-use regulations.

---

[2] In contrast, Edlund said that if the court found the ordinance invalid, she could simply refile a new initiative "with revised wording."

¶10 After full briefing and oral argument, the District Court issued its decision in April 2025. Reading Edlund's "partial" summary judgment motion as encompassing the entire legal question presented under § 7-5-135, MCA, the court construed her motion as one for "complete" summary judgment. Then, because the court could resolve the question presented—"whether the proposed action would be valid and constitutional"—on the validity issue, it declined to reach the constitutionality issue. The court concluded, among other things, that Edlund's proposed ordinance was invalid because it purported to regulate land use under the County's general powers where a specific statutory scheme existed for citizen-initiated land-use and zoning regulations under Title 76, chapter 2, part 1, MCA. Accordingly, the court granted summary judgment to the County on invalidity and denied Edlund's motion.

¶11 Edlund appeals pro se.

## STANDARD OF REVIEW

¶12 This case presents review of a summary judgment decision entered in a proceeding for declaratory judgment under § 7-5-135, MCA (2023). We review district court interpretations, applications, and conclusions of law de novo for correctness. *Gardiner-Park Cnty. Water & Sewer Dist. v. Knight*, 2024 MT 121, ¶¶ 12-13, 417 Mont. 1, 549 P.3d 1151; *City of Great Falls v. Dir. of Dep't of Pub. Health & Human Servs.*, 2002 MT 108, ¶ 10, 309 Mont. 467, 47 P.3d 836.

## DISCUSSION

¶13 Edlund contends that the District Court erred by (1) granting summary judgment on the invalidity of the ordinance and declining to rule on its constitutionality;

6

and (2) rendering an advisory opinion on citizen-initiated zoning. She says the court should have concluded that the ordinance was valid and constitutional and "approved it for inclusion on the ballot" rather than "urging" her "to create a citizen-initiated zoning district."

¶14     *1. Whether the District Court correctly concluded that Edlund's proposed ordinance was invalid under § 7-5-135, MCA.*

¶15     The District Court concluded that Edlund's proposed ordinance was invalid for several reasons. We affirm on the narrow ground that this ordinance, as drafted, would not be a valid exercise of the County's legislative jurisdiction and power if voters approved it. The ordinance creates a detailed countywide WECS land-use permitting, enforcement, penalty, and decommissioning regime; but it invokes the County's general powers under Title 7, chapter 5, MCA. Those general powers remain subject to "limitations and restrictions as are prescribed by law" and apply only "where no other provision is made by law." Section 7-5-2101, MCA. Because the Legislature has specifically prescribed county authority over land-use and zoning regulation in Title 76, chapter 2, MCA, and because the proposed ordinance contains operative provisions exceeding statutory authority, the District Court correctly declared the proposed ordinance invalid under § 7-5-135, MCA.

¶16     Our holding is narrow. We do not hold that local electors may never use initiative power for a measure affecting land use. We hold only that this proposed ordinance, as drafted, cannot proceed because it does not rest on valid statutory authority and because its central permitting and enforcement provisions exceed the County's legislative jurisdiction and power.

7

## I.  Statutory Frameworks

**Title 7, Chapter 5:  Local Government "General Operation and Conduct of Business"**

¶17     Title 7, MCA, governs "Local Government," including a local government unit with self-governing powers governed by a board of county commissioners, like Treasure County.  *See* Title 7, chapter 1, parts 1 and 21, MCA; Mont. Const. art. XI; *see also* § 7-4-2101, et seq., MCA (boards of county commissioners).

¶18     Title 7, chapter 5, MCA, governs local governments' "general operation and conduct of business," and part 1 governs "local government ordinances, resolutions, and initiatives and referendums."  As pertinent, this part provides for two types of ordinances: those submitted to the local governing body for adoption by a majority of its voting members, §§ 7-5-103, -104, -105, -106, MCA, and those proposed by "the electors of a local government" for approval by "a majority of those voting on the question" at the next local government general election, §§ 7-5-131, -132, -133, -134, MCA (2023).

¶19     The second type of ordinance, a citizen-initiated ordinance, is at issue here. Section 7-5-131(1), MCA (2023), provides that:

> [T]he powers of initiative and referendum are reserved to the electors of each local government.  Resolutions and ordinances within the legislative jurisdiction and power of the governing body of the local government may be proposed or amended and prior resolutions and ordinances may be repealed in the manner provided in 7-5-132 through 7-5-135 and 7-5-137.[3]

---

3 In 2025, the Legislature amended § 7-5-131(1), MCA, to provide that "[r]esolutions and ordinances within the legislative jurisdiction and power of the governing body of the local government may be proposed or amended and prior resolutions and ordinances may be repealed in the manner provided in 7-5-137 and Title 13, chapter 28."  The Legislature repealed §§ 7-5-132, -133, -134, and -135, MCA.  *See* 2025 Mont. Laws ch. 225, §§ 18, 26.  Title 13, chapter 28, MCA, newly enacted in 2025, governs "local government ballot issues," and incorporates parts of the repealed §§ 7-5-132 through -135, MCA.  *See* Mont. Laws ch. 225.

*Accord* Mont. Const. art. XI, § 8 ("The legislature shall extend the initiative and referendum powers reserved to the people by the constitution to the qualified electors of each local government unit."); art. V, § 1; art. III, §§ 4, 5. Section 7-5-131(2), MCA, identifies certain subject matters to which "the powers of initiative do not extend," none of which expressly include matters of land use or zoning.

¶20     Sections 7-5-132, -133, and -134, MCA, outline the procedure for a citizen-initiated ordinance. "The electors of a local government may, by petition, request an election on whether to enact, repeal, or amend an ordinance." Section 7-5-132(1), MCA. Once a petition complies with the requirements of § 7-5-134, MCA, and is approved "as to form," "all petition signatures must be collected and filed within 90 days." Section 7-5-134(7), MCA; *see also* § 7-5-134(3), (4), MCA (ballot statements and statements of voting implications must be prepared by county officer and included with the petition). "A petition signed by at least 15% of the local government's qualified electors is sufficient to require an election." Section 7-5-132(1), MCA.[4] "If a majority of those voting on the question approve the proposal, it becomes effective when the election results are officially declared, unless otherwise stated in the proposal." Section 7-5-132(6), MCA.

¶21     Section 7-5-135, MCA, permits a governing body to challenge the action contemplated in a citizen petition; it "may direct that a suit be brought in district court by the local government to determine whether the proposed action would be valid and

---

[4] But see § 7-5-133, MCA, providing that the governing body may "take the action called for in the petition." If it does, "the question need not be submitted to the electors," but if it does not, "then the question must be submitted to the electors at the next regular or primary election."

constitutional." Section 7-5-135(1), MCA. "The suit must be initiated within 14 days of the date a petition has been approved as to form" under § 7-5-134, MCA. Section 7-5-135(1), MCA. The 90-day period for signature gathering begins upon resolution of the suit. Section 7-5-135(4), MCA.

¶22 Finally, because § 7-5-131(1), MCA, permits only proposed ordinances "within the legislative jurisdiction and power of the governing body of the local government," we turn to § 7-5-2101, MCA, which prescribes the "general authority" of the governing body at issue here, a board of county commissioners. To wit:

> The board of county commissioners has jurisdiction and power, under such limitations and restrictions as are prescribed by law, to represent the county and have the care of the county property and the management of the business and concerns of the county in all cases where no other provision is made by law . . . [and] to perform all other acts and things required by law not enumerated in this title or which may be necessary to the full discharge of the duties of the chief executive authority of the county government.

Section 7-5-2101(1)-(2), MCA; *see also* §§ 7-1-104, -111, -112, -114, -116, -117, MCA (further prescribing the powers of local government units, including "powers denied" and powers requiring specific legislative delegation).

**Title 76, Chapter 2, Part 1: Citizen-Initiated "Planning and Zoning"**

¶23 Title 76, MCA, governs "Land Use," including, under chapter 2, "planning and zoning." At the county level, zoning may be either citizen-initiated, § 76-2-101, et seq., MCA (part 1), or county-initiated, § 76-2-201, et seq., MCA (part 2). *Accord Williams v. Bd. of Cnty. Comm'rs*, 2013 MT 243, ¶ 37, 371 Mont. 356, 308 P.3d 88. Part 1 provides a specific statutory process for citizen-initiated county planning and zoning. "On petition of 60% of the affected real property owners in the proposed district" and "whenever

10

the public interest or convenience may require," a board of county commissioners may create a planning and zoning district and a county planning and zoning commission (CPZC). Section 76-2-101(1), (4), MCA.[5],[6] The CPZC then prepares a "development pattern" and adopts a "development district," including recommendations for land use and zoning, after public notice and hearing. Sections 76-2-104, -106, MCA.[7] The CPZC may submit draft resolutions, including zoning and land-use regulations, to the board of county commissioners "for the purpose of carrying out the development district[]." Section 76-2-107(1), MCA; *accord* § 76-2-104(2), MCA.[8] Part 1 expressly reserves land-use permitting authority to the CPZC, which may "authorize and provide for the issuance of permits as a prerequisite to construction, alteration, or enlargement of any building or structure" and "establish and collect reasonable" permitting fees. Section 76-2-108, MCA.

¶24 Part 1 separately governs enforcement and judicial review. Section 76-2-113, MCA, authorizes county proceedings to prevent, restrain, correct, or abate violations of

---

[5] *See also* § 7-1-101(1), (2)(b), (5), MCA (how a board of county commissioners creates a "commission"); § 76-2-102, MCA (CPZC organization and operation).

[6] A citizen-initiated "planning and zoning commission" created pursuant to § 76-2-101(1), MCA, is not to be confused with a "planning board" created pursuant to Title 76, chapter 1, part 1, MCA, for the purpose of preparing a comprehensive master "growth policy" and advising the subject governing body on matters related to growth and development. *See, e.g.*, §§ 76-1-101, -102, -103, -104, -106, -107, MCA; Title 76, chapter 1, part 6, MCA (growth policies).

[7] If the CPZC "is unable to make and adopt a development pattern or to adopt a development district," the board of county commissioners "may adopt a resolution to void" the "planning and zoning district created" under § 76-2-101, MCA. Section 76-2-107(2), MCA.

[8] *Compare* §§ 76-2-109, -114, MCA (limits on CPZC land-use regulations).

part 1 or resolutions adopted under part 1. Section 76-2-110, MCA, permits "any person aggrieved by any decision of" the CPZC or board of county commissioners to appeal to district court within thirty days. Part 1 also provides a specific citizen-initiated referendum process for terminating a planning and zoning district. That referendum process applies to real property owners in the zoning district and registered electors residing in the zoning district. Section 76-2-118(1)-(2), MCA; *see also* § 7-5-131(1), MCA (citizen-initiated referendums).

**Title 76, Chapter 2, Part 2: County-Initiated "Zoning"**

¶25    Title 76, chapter 2, part 2, MCA (part 2), separately provides for county-initiated zoning. A board of county commissioners that has established a county planning board, § 76-1-101, MCA; established the planning board's jurisdictional area, § 76-1-501, MCA; and adopted the planning board's recommended growth policy, §§ 76-1-603, -604, MCA, may "adopt zoning regulations for all or parts of the jurisdictional area in accordance with the provisions" of Title 76, chapter 2, part 2. Sections 76-2-201(1), -202(1), MCA.[9]

¶26    The board of county commissioners "may regulate the erection, construction, reconstruction, alteration, repair, location, or use of buildings or structures or the use of land" "[b]y establishing zoning regulations." Section 76-2-202(1)(a), MCA. County-initiated zoning regulations "must be made in accordance with the growth policy"

---

[9] Like with the creation of a citizen-initiated "planning and zoning district" under part 1, "an action challenging the creation of a zoning district or adoption of zoning regulations" under part 2 "must be commenced within 6 months after the date of the order by the board of county commissioners creating the district or adopting the regulations." Section 76-2-202(1)(b), MCA; *compare* § 76-2-101(1), (4), MCA.

and meet other specific criteria, including "promot[ing] public health, public safety, and general welfare." *See* §§ 76-2-203(1)(a)-(b), (2)-(4), -209, -212, -240, MCA.[10]

¶27    County-initiated zoning regulations are subject to public notice, public inspection, and public hearing requirements. Section 76-2-205(1)-(3), MCA. First, after public notice, inspection, and hearing, the board of county commissioners may pass a "resolution of intention . . . to adopt zoning regulations for the district," § 76-2-205(4), MCA; then, the board must publish notice of the resolution of intention and receive public comment from real property owners within the district, § 76-2-205(5), MCA; finally, the board may adopt the resolution "establishing the zoning regulations for the district," § 76-2-205(6), MCA.

¶28    Unlike part 1 citizen-initiated zoning, which reserves permitting authority to the CPZC, part 2 county-initiated zoning authorizes the board of county commissioners to "provide for the issuance of location or conformance permits and may collect a fee for each such permit." Section 76-2-207, MCA; *compare* § 76-2-108, MCA. Enforcement of county-initiated zoning regulations is similar but not identical to enforcement of citizen-initiated zoning regulations. *Compare* §§ 76-2-210, -113, MCA. Part 2 makes "a violation of [part 2] or any resolution adopted pursuant thereto . . . a misdemeanor" punishable by up to a $500 fine and six-month jail sentence. Section 76-2-211, MCA; *accord* § 7-5-109(1), MCA (authorizing local government to penalize ordinance violations

---

[10] Section 76-2-204(1), MCA, further provides that a board of county commissioners "shall require the county planning board . . . to recommend boundaries and appropriate regulations for the various zoning districts" and "make written reports of their recommendations to the board of county commissioners, but such recommendations shall be advisory only."

by no more than a $500 fine and six-month jail term). Conversely, part 1 creates no such express penalty.

¶29 Also, unlike part 1, part 2 directs the board of county commissioners to establish a "board of adjustment." Sections 76-2-221, -222, MCA. The board of adjustment hears and decides appeals concerning alleged errors in zoning enforcement and exceptions to zoning regulations and may grant variances where "a literal enforcement . . . will result in unnecessary hardship." Sections 76-2-223(1)(a)-(c), (2), -208, -224, -226, MCA; *compare* § 76-2-106(2), MCA (board of county commissioners authorize variances in part 1 citizen-initiated zoning). Board of adjustment proceedings and records must be public. Section 76-2-225, MCA.[11]

¶30 Part 2 provides that the board of county commissioners may establish process for appeals from decisions of the board of adjustment to the board of county commissioners. Section 76-2-227(1), MCA; *compare* § 76-2-107(1), MCA. Even if there is no intermediate appeal process established, any person aggrieved by a board of adjustment or board of county commissioners' decision may appeal to a "court of record." Section 76-2-227(2)-(5), MCA (appeal is by petition for writ of certiorari); *compare* § 76-2-110, MCA (appeal from board of county commissioner or CPZC decision to district court).

---

[11] Part 2 also authorizes the board of county commissioners, at its discretion, to create an advisory "zoning commission" as "an optional method of amending any zoning regulations." Section 76-2-220(1), MCA. If created, the zoning commission, composed of at least five citizen-members, will hold public hearings and make recommendations to the board of county commissioners. Section 76-2-220(2), MCA.

¶31 Finally, as with citizen-initiated zoning, county-initiated zoning may be undone by referendum. Like the part 1 referendum process, the part 2 referendum process applies to real property owners in the zoning district and registered electors residing in the zoning district. Section 76-2-229, MCA; *see also* § 7-5-131(1), MCA (citizen-initiated referendums).[12]

## II. The Invalidity of Edlund's Proposed Ordinance

¶32 The district court inquiry under § 7-5-135, MCA, is whether the proposed citizen-initiated action would be valid and constitutional if it became the law. This inquiry requires examination of the subject matter of the proposed action. *Ravalli Cnty.*, ¶¶ 15-19.

**The Proposed Ordinance Regulates Land-Use and Creates a Permitting Scheme**

¶33 Here, the proposed ordinance's stated purpose is "to outline a permitting process" and establish "standards" for WECS in Treasure County. The ordinance would apply to "construction and operation" of WECS, including towers, blades, turbines, transmission lines, cables, wires, accessory buildings, landscaping, fencing, screening, and parking areas. The ordinance would regulate: "public safety" (setbacks, water supplies, signage,

---

[12] While not directly at issue here, we note that the Legislature has also separately enacted the Montana Land Use Planning Act (MLPA), Title 76, chapter 25, MCA. The MLPA promotes "a system of comprehensive planning," including by "coordinated and planned growth" at the local level through establishment of a local "planning commission" and "land use plan." Sections 76-25-102, -104, -201, MCA. Under the MLPA, local governments are authorized to "regulate the use of land" by adopting "zoning regulations" that must substantially comply with the "land use plan." Sections 76-25-301, -303, -304, MCA. The MLPA requires a local government to "provide continuous public participation when adopting, amending, or updating a land use plan or regulations." Section 76-25-106, MCA. Local governments that comply (either municipalities of a certain population size that must comply or smaller-population local governments that elect to comply) are not subject to the separate provisions of Title 76, chapters 1 or 2, MCA. Section 76-25-105, MCA.

ice-throws, and audible sound); "compatibility with adjoining land uses and scenic resources" (setbacks, tower height, facility visibility, exterior finish, lighting, shadow-flicker, groundwater impacts, and noxious weed management); "wildlife" (impacts on migratory birds, bats, and endangered or protected species); facility "abandonment" (re-use, transfer, and removal); and "indemnification and insurance" (county indemnification, $100 million per-occurrence liability insurance, and non-waiver of liability arising out of firefighting expenses).

¶34    The ordinance would also provide a "permitting process," establishing application requirements; required consultation with county, state, and federal agencies; a $1,500 per-WECS ("wind tower") application review fee; public notice, comment, and hearing on permitting applications; and permit approval by the Treasure County Board of County Commissioners.  The ordinance would also regulate "construction periods" with approved time-extensions only after public notice and hearing, and "modification of existing permits" only upon similar public notice and hearing requirements.  "Non-compliance" with the ordinance "shall result in fines of $10,000 per day, permit denial or revocation, . . . and facility decommissioning."  The ordinance provides for appeals from a Board of County Commissioners' decision to district court by "aggrieved parties," including the property owner, property owners within two miles of the facility, the tower operator, or any party who can establish specific interest and injury.

¶35     Edlund's proposed ordinance regulates land use, growth, and development and is therefore, effectively, a land-use and zoning ordinance.[13]   While land-use and zoning ordinances are generally "within the legislative jurisdiction and power" of a board of county commissioners, § 7-5-131(1), MCA,[14] that jurisdiction and power over land-use and zoning regulations is specifically prescribed by Title 76, chapter 2, parts 1 and 2, MCA.[15]   When, as here, a county ordinance creates a land-use permitting and enforcement scheme for structures and land uses, it must rest on statutory authority that allows the County to administer and enforce that scheme.

**The Specific Provisions of Title 76, Chapter 2, Control Over the General Provisions of Title 7, Chapter 5**

¶36     To the extent that specific and general statutory provisions conflict, a particular statutory intent controls over a general one.  Section 1-2-102, MCA; *State v. Smith*, 2004 MT 191, ¶ 17, 322 Mont. 206, 95 P.3d 137.  "When two statutes deal with a subject, one in general and comprehensive terms, and the other in minute and more definite terms,

---

[13] *See Egan Slough Cmty. v. Flathead Cnty. Bd. of Cnty. Comm'rs*, 2022 MT 57, ¶ 32, 408 Mont. 81, 506 P.3d 996 (zoning "is a form of regulation that promotes the general public health, safety, and welfare of the whole community by, among other things, separating incompatible land uses and regulating growth and development").

[14] *See, infra*, *Greens at Fort Missoula, LLC v. City of Missoula*, 271 Mont. 398, 897 P.2d 1078 (1995).

[15] And, though not at issue here, the MLPA also governs local government land-use planning and zoning regulations, Title 76, chapter 25, MCA.

the more definite statute will prevail to the extent of any opposition between them." *Smith*, ¶ 17; *State v. Feight*, 2011 MT 205, ¶ 21, 306 Mont. 312, 33 P.3d 623.[16]

¶37    A board of county commissioners has general "jurisdiction and power" under Title 7, chapter 5, "to represent the county and have the care of the county property and the management of the business and concerns of the county in all cases where no other provision is made by law" and "to perform all other acts and things required by law not enumerated in this title or which may be necessary" to fully discharge its duties. Section 7-5-2101, MCA.  That general "jurisdiction and power," however, is subject to "such limitations and restrictions as are prescribed by law" and applies only "where no other provision is made by law."  Section 7-5-2101, MCA.  As it pertains to land-use and zoning authority, a board of county commissioners' "jurisdiction and power" is more specifically prescribed elsewhere in Montana's code.  We must read Title 7, chapter 5, general local government powers, and Title 76, chapter 2, local government zoning powers, together to give effect to both.  To the extent of any opposition between them, as is the rule, the specific powers created by and described in Title 76, chapter 2, control over the general powers described in Title 7, chapter 5, as to matters of land use and zoning.

---

[16] Also, "a general statute which does not expressly affect a previously enacted specific statute has no effect on the earlier specific statute, unless intent to repeal the earlier specific statute is either clearly manifested or unavoidably implied by irreconcilable differences created by the continued operation of the statutes." *Trustees, Carbon Cnty. Sch. Dist. No. 28 v. Spivey*, 247 Mont. 33, 36, 805 P.2d 61, 63 (1991).  Most provisions of Title 76, chapter 2, parts 1 and 2, predate § 7-5-131, MCA, enacted in 1977, and nothing in §§ 7-5-131 through -135, MCA, purports to repeal—expressly or impliedly—the provisions of parts 1 or 2.  *Accord Clark Fork Coalition v. Mont. Dep't of Natural Res. & Conservation*, 2021 MT 44, ¶ 60, 403 Mont. 225, 481 P.3d 198 (the Legislature "is presumed to be aware of all of its enactments").

¶38    Edlund correctly notes that § 7-5-131(2), MCA, does not list land use or zoning among subjects excluded from local initiative.  We therefore do not read § 7-5-131(2), MCA, to impose a categorical land-use exception.  The limitation arises instead from § 7-5-131(1), MCA, which permits local initiatives only for ordinances "within the legislative jurisdiction and power" of the governing body.  The question is not whether an initiative may ever affect land use.  The question is whether this ordinance, as drafted, would be within the County's legislative jurisdiction and power if voters approved it.

¶39    The people's power of initiative, while broadly construed,[17] remains constrained by the local governing body's "legislative jurisdiction and power" and by the requirement that the proposed action be valid and constitutional.  Sections 7-5-131(1), -135, MCA; *accord Cottonwood Envt'l L. Ctr. v. State*, 2024 MT 313, ¶¶ 14-16, 419 Mont. 457, 560 P.3d 1227 ("the initiative power at any level . . . has constraints").  Section 7-5-131, MCA, allows local electors to propose ordinances within that authority.

¶40    We must construe § 7-5-131, MCA, and Title 76, chapter 2, MCA, in harmony, if possible, to give effect to both.  *State v. Triplett*, 2008 MT 360, ¶ 25, 346 Mont. 383, 195 P.3d 819.  We can do so here.  Section 7-5-131, MCA, preserves local initiative power for ordinances within the governing body's legislative jurisdiction and power.  Title 76, chapter 2, MCA, defines and limits county authority over land-use and zoning regulation.  Reading the statutes together preserves initiative power without allowing an initiative to

---

[17] *Town of Whitehall v. Preece*, 1998 MT 53, ¶ 18, 288 Mont. 55, 956 P.2d 743.

19

confer substantive authority on a local governing body that the Legislature has not provided.

**The Proposed Ordinance Exceeds the County's Authority**

¶41 Edlund's proposed ordinance purports to empower Treasure County's Board of County Commissioners to regulate construction and operation of WECS in the county and approve, conditionally approve, or deny WECS permit applications. But Treasure County's Board of County Commissioners does not have "legislative jurisdiction and power" under Title 7, chapter 5, or Title 76, chapter 2, parts 1 or 2, to implement or enforce such an ordinance.

¶42 First, the ordinance is not a county-initiated zoning regulation under Title 76, chapter 2, part 2, MCA. Even if, as Edlund claims, the ordinance "substantially complies" with the County's growth policy, the ordinance was not established and adopted pursuant to §§ 76-2-202(1)(a), -203, and -205, MCA; it cannot be enforced pursuant to § 76-2-210, MCA; it is not subject to the board-of-adjustment procedure required by §§ 76-2-221(1), -223(1), and -208, MCA; its $10,000 per-day penalty provision conflicts with §§ 76-2-211 and 7-5-109, MCA; and its judicial appeal provisions differ from those provided under § 76-2-227(2)-(5), MCA. Treasure County's Board of County Commissioners has permitting authority under part 2 only as provided by § 76-2-207, MCA. The proposed ordinance therefore would not be valid or enforceable as a part 2 county-initiated land-use or zoning regulation.

¶43 Second, the proposed ordinance is not a land-use regulation adopted under Title 76, chapter 2, part 1, MCA. Nothing in the record indicates that the Board of County

Commissioners, on property-owner petition, created a planning and zoning district or appointed a CPZC under § 76-2-101, MCA. The ordinance was not prepared by a CPZC for the purpose of carrying out a development district. Sections 76-2-104, -106, -107, -113, MCA. It assigns permitting authority to the Board of County Commissioners, although part 1 assigns permitting authority to the CPZC. Section 76-2-108, MCA. It does not provide for variances under §§ 76-2-105 and -106(2), MCA. Therefore, the proposed ordinance would not be valid or enforceable as a part 1 land-use or zoning regulation.

¶44 Edlund contends that the County cannot now argue that the proposed ordinance is invalid because it invokes the Board of County Commissioners' "general authority" under § 7-5-2101, MCA, where the County "instructed" her to cite that provision. First, the record shows that Edlund included the quoted language from § 7-5-2101 before the County noted the mis-citation. Second, the ordinance's invalidity does not turn on Edlund's citation to § 7-5-2101 alone. An incorrect or incomplete citation would not, by itself, invalidate an otherwise valid initiative. The problem is substantive: the controlling question is whether the ordinance's operative provisions would fall within the County's legislative jurisdiction and power if voters approved it. Here, the proposed ordinance creates a permitting and enforcement system that the Board of County Commissioners would have to administer if voters approved it. The Board has no general authority to implement that system outside the limitations and procedures prescribed by law. Section 7-5-2101, MCA.

**Edlund's Authorities Are Distinguishable**

¶45    Edlund and the County cite numerous cases in support of their arguments, but none squarely answer the validity question presented under § 7-5-135, MCA.  For example, Edlund cites *Greens at Fort Missoula, LLC v. City of Missoula*, 271 Mont. 398, 897 P.2d 1078 (1995), for the proposition that "a voter initiative may be used to zone land." *Greens*, and its progeny, *Town of Whitehall v. Preece*, 1998 MT 53, ¶ 18, 288 Mont. 55, 956 P.2d 743, involved citizen-initiated *referendums* to repeal existing, city-enacted land-use ordinances; neither case involved citizen-initiated land-use regulations like the proposed ordinance at issue here.  *Greens*, 271 Mont. at 400-06, 897 P.2d at 1079-82; *Preece*, ¶¶ 7-8, 17-18, 25.  *Greens* and *Preece* therefore support Edlund's general point that local direct democracy may reach legislative land-use decisions.  They do not validate this ordinance's permitting and enforcement provisions.

¶46    Edlund also cites *Egan Slough Cmty. v. Flathead Cnty. Bd. of Cnty. Comm'rs*, 2022 MT 57, 408 Mont. 81, 506 P.3d 996, as a case where this Court "upheld the adoption of land use ordinances" through the citizen-initiative process.  *Egan*'s holding is more nuanced and does not require reversal here.  In *Egan*, Flathead County citizens sought to expand an existing citizen-initiated zoning district by adding adjacent land; the goal was to encompass within the existing agricultural-zoned district land that was being developed for a large-scale water bottling plant, Montana Artesian, and thereby subject that land to existing zoning regulations.  *Egan*, ¶¶ 1, 4, 6.  The county board of commissioners denied the citizen-initiated zoning petition, so the citizens put forth a citizen initiative

22

under § 7-5-131, MCA, to expand the zoning district, which county voters passed. *Egan*, ¶¶ 7, 9-10.

¶47    Among other things, Montana Artesian claimed that the citizen initiative expanding the district was invalid under § 7-5-131(1), MCA, because it "legislat[ed] on subjects beyond the authority" of the board of county commissioners and bypassed the planning and zoning committee's authority to develop a new development pattern and recommend new zoning regulations for the added land. *Egan*, ¶¶ 44-47. We disagreed. We first noted that "the statutes to consider in determining the authority of the county's electors to expand the [zoning district] through citizen initiative under [the] circumstances [were] the Part 1 zoning statutes." *Egan*, ¶ 47. The part 1 statutes empowered the board of county commissioners to create the zoning district and appoint the planning and zoning committee, which it did many years prior pursuant to § 76-2-101(1), MCA. The part 1 statutes, specifically § 76-2-117, MCA, also empowered the board of county commissioners "to expand an existing zoning district to include adjacent land." Therefore, expanding the existing zoning district was within the board of county commissioners' express "legislative jurisdiction and power" and thereby "subject to the initiative power of the people." *Egan*, ¶¶ 45-47. Critically, "land added to [the] zoning district under § 76-2-117, MCA, becam[e] subject to [the] existing zoning regulations" previously developed by the planning committee and therefore the initiative "did not create new regulations or bypass the authority of a planning and zoning commission" under part 1 "to recommend regulations based on the development pattern of the district." *Egan*, ¶ 47.

23

¶48    *Egan* supports our reading of § 7-5-131 and Title 76, chapter 2, part 1, MCA. Expansion of an existing county-created zoning district is explicitly within the board of county commissioners' power under § 76-2-117, MCA, and a citizen initiative *expanding the existing zoning district* therefore did not purport to regulate land use outside the governing body's jurisdiction and power.  Unlike in *Egan*, there is no established CPZC in Treasure County nor any established citizen-initiated zoning district, and Edlund's proposed ordinance does not purport to expand an existing zoning district, but rather, to regulate land use county-wide under the Board of County Commissioners' Title 7, chapter 5 "general authority."  *Egan* does not support Edlund's claims.

¶49    Edlund also cites *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S. Ct. 114 (1926), *Freeman v. Bd. of Adjustment*, 97 Mont. 342, 34 P.2d 534 (1934), and *Williams* for the proposition that "the County has the power to adopt and enforce . . . regulations that affect the use of land."  Even though not factually analogous, those cases support the general proposition that local governments may regulate land use under valid zoning authority. *Accord Greens*, 271 Mont. at 400-06, 897 P.2d at 1080-81; *Egan*, ¶¶ 45-47.  They do not answer whether this proposed ordinance properly invokes that authority.  The issue here is not whether a county may regulate land use.  The issue is whether Edlund's proposed ordinance would be within Treasure County's Board of County Commissioners' authority if voters approved it.  It would not.

¶50    Finally, Edlund relies on *Kafka v. Mont. Dep't of Fish, Wildlife & Parks*, 2008 MT 460, 348 Mont. 80, 201 P.3d 8, and *Seven Up Pete Venture v. State*, 2005 MT 146, 327 Mont. 306, 114 P.3d 1009.  Those cases involved statewide initiatives enacted under

24

statewide legislative authority. They do not govern the statutory limits on a county initiative under § 7-5-131, MCA, which reaches only ordinances within the legislative jurisdiction and power of the local governing body.

¶51 In sum, § 7-5-131, MCA, permits citizens to propose ordinances "within the legislative jurisdiction and power of the governing body of the local government." Section 7-5-2101, MCA, grants a board of county commissioners general authority, but only "under such limitations and restrictions as are prescribed by law." Title 76, chapter 2, MCA, supplies specific statutory authority and limits for county land-use and zoning regulation. Those specific statutes control over the general powers provided local governments in Title 7, chapter 5, MCA, to the extent of any conflict.

¶52 Accordingly, we hold that the District Court correctly concluded that Edlund's proposed ordinance was invalid under § 7-5-135, MCA. The ordinance, as drafted, would create a countywide WECS land-use permitting and enforcement regime under the County's general powers, even though specific statutes govern county land-use and zoning authority, and the ordinance's central permitting, enforcement, penalty, appeal, and decommissioning provisions do not comply with those statutes. The County therefore is not required to approve Edlund's petition for signature gathering or place the proposed ordinance before the electorate for a vote.

**Edlund's Remaining Claims of Error, Including Constitutionality**

¶53 Though the Treasure County Board of County Commissioners' lack of "jurisdiction and power" to implement and enforce the proposed ordinance is dispositive under § 7-5-135(1), MCA, we briefly address Edlund's remaining claims of error. Edlund

25

contends that the District Court applied the wrong summary judgment standard, incorrectly concluded the ordinance conflicted with other laws, failed to give effect to the ordinance's severability clause, and failed to rule on the constitutionality of the ordinance. None of these claims requires reversal.

¶54 First, the District Court did not reversibly misapply the summary judgment standard. The parties disputed the legal significance of the ordinance and the statutory framework but did not materially dispute the ordinance's text and procedural posture. The dispositive question was whether the proposed action would be valid and constitutional under § 7-5-135, MCA. The District Court resolved that legal question on cross-motions for summary judgment. *See Gardiner-Park Cnty.*, ¶¶ 12-13; *City of Great Falls*, ¶ 10. We do not rely on any factual finding that Edlund failed to "prove" the policy basis for WECS regulation. The wisdom, necessity, or factual support for wind-facility regulation is not before us. We decide only whether the proposed ordinance, as drafted, would be valid and enforceable if voters approved it.

¶55 Second, several provisions in the proposed ordinance confirm its invalidity. The penalty provision imposes a $10,000 per-day fine, exceeding the penalty authority available to counties under § 7-5-109, MCA, and exceeding the penalty provision applicable to county-initiated zoning under § 76-2-211, MCA. The ordinance assigns the Board of County Commissioners permitting authority in a manner inconsistent with §§ 76-2-108 and -207, MCA. The ordinance also includes decommissioning, transmission-line, insurance, appeal, and enforcement provisions that the County would have to administer without a valid statutory foundation for the permitting regime. We need

26

not decide whether every challenged provision independently conflicts with state or federal law. The central defect is that the ordinance's operative provisions depend on authority the County has not been given under the general powers provided in Title 7, chapter 5, MCA.

¶56 Third, Edlund's claim that the District Court should have exercised severability to make the proposed ordinance valid under § 7-5-135, MCA, also fails. Edlund's ordinance directs that "invalid or unenforceable" provisions were to be severed and "the remainder" was to "continue in effect." But a severability clause cannot supply statutory authority that the County lacks. It also cannot require a court to rewrite a proposed ballot measure into a materially different ordinance. The invalid provisions are central to the ordinance's operation: they define who issues permits, how permits are enforced, how violations are punished, how facilities are decommissioned, and how decisions are reviewed. Even if a court could sever a discrete invalid provision in a § 7-5-135, MCA, proceeding, severing the central permitting and enforcement provisions here would defeat the ordinance's stated purpose "to outline a permitting process for wind energy conversion systems." The District Court did not err by declining to salvage the proposed ordinance through severability.

¶57 Lastly, Edlund claims that the District Court erroneously failed to rule on the constitutionality of the proposed ordinance. She offers many reasons for why the proposed ordinance was constitutional, including that citizen initiatives may affect land use; land use is not specifically included in the list of impermissible subject matters for citizen initiatives under § 7-5-131(2), MCA; the initiative process, including signature-gathering and voting,

27

preserves constitutional notice and participation principles; and the Legislature recently amended the local initiative and referendum statutes without limiting those powers.

¶58 Section 7-5-135(1), MCA, establishes that the inquiry upon challenge by a local governing body is "whether the proposed action would be valid and constitutional" if it became law. This is a conjunctive test: a proposed ordinance must be both valid *and* constitutional; if not, it must fail. *See Helvik v. Toscano*, 2025 MT 150, ¶ 36, 423 Mont. 85, 571 P.3d 1058; *American Fed. S&L Ass'n v. Madison Valley Props. Inc.*, 1998 MT 93, ¶ 26, 288 Mont. 365, 958 P.2d 57. Upon concluding that the proposed ordinance was invalid under § 7-5-135, MCA, the District Court declined to reach the constitutionality question. This was not error. Courts should avoid constitutional rulings when a case may be resolved on nonconstitutional grounds. *Solem v. Dep't of Revenue*, 2024 MT 217, ¶ 26, 418 Mont. 176, 557 P.3d 919.

¶59 *2. Whether the District Court issued an advisory opinion.*

¶60 Edlund contends that the District Court improperly issued "an advisory opinion on [her] possible use of § 76-2-101, MCA." We disagree. "Cases" and "controversies" within the judicial power to determine do not include "abstract differences of opinion." *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 9, 355 Mont. 142, 226 P.3d 567 (citation omitted). A "controversy" is one that is "definite and concrete, touching legal relations of parties having adverse legal interests," i.e., a "real and substantial controversy, admitting of specific relief through decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts, or upon an

28

abstract proposition." *Plan Helena, Inc.*, ¶ 9 (citation omitted); *Arnone v. City of Bozeman*, 2016 MT 184, ¶ 14, 384 Mont. 250, 376 P.3d 786.

¶61 The County sought declaratory judgment under § 7-5-135, MCA, that Edlund's proposed ordinance was invalid and unconstitutional. The District Court resolved that concrete dispute by declaring the ordinance invalid and entering judgment for the County. That judgment was not advisory; it definitively and correctly resolved the subject controversy—the validity of Edlund's proposed ordinance under § 7-5-135, MCA. The court's comments about other possible statutory routes for land-use regulation were unnecessary to its judgment, and we do not adopt them as a holding. But unnecessary dicta do not transform a final judgment resolving an actual controversy into an advisory opinion. *See Plan Helena*, ¶ 9; *Arnone*, ¶ 14.

## CONCLUSION

¶62 We hold that the District Court correctly concluded Edlund's proposed ordinance was invalid under § 7-5-135, MCA. The ordinance, as drafted, would create a countywide WECS land-use permitting and enforcement regime under the Treasure County Board of County Commissioners' general authority, Title 7, chapter 5, MCA, although specific statutes under Title 76, chapter 2, parts 1 and 2, MCA, govern county land-use and zoning authority and the ordinance's central operative provisions do not comply with those statutes. The County is not required to approve Edlund's petition or submit the proposed ordinance for election. Nothing in this Opinion decides whether a differently drafted measure, proceeding under proper statutory authority and consistent with applicable state and federal law, could be submitted to the voters.

¶63   Affirmed.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON